IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

L.E., a minor, by and through his
Natural Parent and Guardian, THERESE EVANS, CASE NO.:

Plaintiff,

v.

WALMART INC.,

Defendant.
_______________________________________/

**COMPLAINT**

Plaintiff, L.E, a minor, by and through his Natural Parent and Guardian, THERESE EVANS, and by and through the undersigned counsel, hereby sues Defendant, WALMART INC. ("Walmart"), and alleges:

**GENERAL ALLEGATIONS**

1. This is an action for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest, costs, and attorney's fees.

2. At all times material hereto, Plaintiff, L.E. ("Plaintiff"), was a minor residing in Palm Beach County, Florida and is otherwise *sui juris* by and through his parent and natural guardian, THERESE EVANS.

3. Defendant, WALMART INC. ("Walmart"), is a foreign corporation authorized to conduct business in the State of Florida and regularly conducts substantial business within Palm Beach County.

4. Venue is proper in Palm Beach County because the subject incident occurred in Palm Beach County and Defendant conducts business therein.

NOT A CERTIFIED COPY



FILED: PALM BEACH COUNTY, FL, MICHAEL A. CARUSO, CLERK, 07/30/2026 03:57:52 PM

5. On or about November 1, 2025, Plaintiff was lawfully operating a Ridstar electric bicycle that had been purchased through Walmart.com.

6. At all times material hereto, Walmart marketed, advertised, promoted, distributed, offered for sale, sold, facilitated the sale of, and/or otherwise placed the subject electric bicycle into the stream of commerce.

7. Specifically, the subject electric bicycle was purchased with order #2000137-63646788 on August 29, 2025, and branded as Ridstar Electric Bike, Peak 1500W30MPH,48V 15.6Ah Electric Bicycle, Full Suspension Mountain Bike UL2849 ("subject electric bicycle" and "subject bicycle").

8. At all times material hereto, Walmart represented itself to consumers as a trusted retailer through which consumers could safely purchase products offered on Walmart.com.

9. At all times material hereto, Walmart exercised substantial control over its online marketplace, including but not limited to approving third-party sellers, establishing marketplace requirements, regulating product listings, processing customer payments, facilitating communications between purchasers and sellers, receiving customer complaints, and retaining authority to remove products and sellers from its marketplace.

10. At all times material hereto, Walmart derived financial benefit from the sale of products offered through Walmart.com, including the subject electric bicycle.

11. At all times material hereto, Walmart knew or reasonably should have known that electric bicycles are capable of causing catastrophic injury if defectively designed, manufactured, assembled, or inspected.

12. At all times material hereto, Walmart further knew or reasonably should have known that electric bicycles sold through Walmart.com were foreseeably purchased for and

NOT A CERTIFIED COPY

operated by minors and young adults throughout the United States, regardless of any age designation contained within product literature. This is apparent through the reviews placed on its website.

13. At all times material hereto, Walmart owed consumers, including Plaintiff, a duty to exercise reasonable care in selecting, approving, monitoring, supervising, retaining, and permitting third-party sellers to offer potentially dangerous products for sale through Walmart.com.

14. At all times material hereto, Walmart further owed consumers a duty to exercise reasonable care in ensuring that products sold through its marketplace were reasonably safe for their intended and foreseeable uses.

15. At all times material hereto, on or about November 1, 2025, while Plaintiff was operating the subject Ridstar electric bicycle in a reasonably foreseeable manner, the bicycle suddenly and catastrophically failed when the front wheel unexpectedly detached during normal operation.

16. As a direct result of the front wheel separating from the bicycle, Plaintiff was violently thrown forward onto the pavement suffering severe and permanent injuries.

17. Upon information and belief, prior to the subject incident, Defendant Walmart knew or should have known of complaints, customer reports, warranty claims, product failures, and other information indicating that the subject Ridstar electric bicycles presented unreasonable safety risks to consumers.

18. Upon information and belief, Walmart possessed, maintained, or had access to information concerning customer complaints, return data, warranty claims, safety reports,

NOT A CERTIFIED COPY

incident reports, seller communications, and other information concerning the safety and reliability of the subject product.

19. Walmart nevertheless continued to market, advertise, facilitate, promote, distribute, and profit from the sale of the subject bicycle despite its ability to investigate, suspend, remove, or otherwise restrict unsafe products offered through its online marketplace.

20. Following Plaintiff's injuries, additional safety information concerning Ridstar electric bicycles became publicly available, including two separate warnings issued by the United States Consumer Product Safety Commission ("CPSC").

21. On March 19, 2026, the CPSC issued a warning identifying the Ridstar Q20 and Q20 Pro electric bicycles as presenting risks of serious injury or death, citing multiple reported fire incidents involving the bicycles' batteries and wiring, and noting that the manufacturer refused to agree to an acceptable recall.

22. On June 25, 2026, the CPSC issued a second warning identifying the Ridstar Q20 and Q20 Lite electric bicycles as presenting risks of serious injury or death due to the front wheel detaching without warning during use, citing approximately 32 reported incidents of front wheel detachment resulting in 31 reported injuries, and again noting that the manufacturer failed to cooperate with the CPSC's request for information and that no recall was issued.

NOT A CERTIFIED COPY

**COUNT I**
**STRICT PRODUCTS LIABILITY — DESIGN DEFECT**
**AGAINST WALMART INC.**

21. Plaintiff realleges and incorporates paragraphs 1 through 22 as though fully set forth herein.

22. At all times material hereto, Walmart was engaged in the business of marketing, advertising, distributing, supplying, facilitating the sale of, selling, and otherwise placing consumer products, including electric bicycles, into the stream of commerce.

23. Walmart marketed, advertised, offered for sale, sold, distributed, facilitated the sale of, and otherwise placed the subject Ridstar electric bicycle into the stream of commerce through Walmart.com.

24. Walmart derived financial benefit from the sale of the subject bicycle and held itself out to consumers as a trusted retailer through which consumers could safely purchase products offered on its online marketplace.

25. The subject Ridstar electric bicycle was defectively designed and unreasonably dangerous when used in its intended or reasonably foreseeable manner.

26. Specifically, the bicycle's wheel retention system was designed in a manner that permitted the front wheel to unexpectedly detach during ordinary operation, causing a sudden and catastrophic loss of control.

27. The design defect existed at the time the bicycle left Walmart's possession, distribution chain, marketplace, or control and reached Plaintiff without substantial change.

28. A safer alternative design was available, economically and technologically feasible, and would have prevented or substantially reduced the risk of the front wheel detaching without impairing the bicycle's utility.

29. The risks posed by the defective design outweighed any purported benefits of the design as manufactured and sold.

30. As a direct and proximate result of Walmart's sale of the defectively designed electric bicycle to Plaintiff's guardian, the Plaintiff, L.E., a minor, sustained bodily injuries

NOT A CERTIFIED COPY

resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money, and aggravation of a previously existing condition. These losses are either permanent or continuing in nature and Plaintiff, L.E., will suffer these losses in the future.

**COUNT II**
**STRICT PRODUCTS LIABILITY — MANUFACTURING DEFECT AGAINST WALMART INC.**

31. Plaintiff realleges and incorporates paragraphs 1 through 22 as though fully set forth herein.

32. At all times material hereto, Walmart was engaged in the business of marketing, advertising, distributing, supplying, facilitating the sale of, selling, and otherwise placing consumer products, including electric bicycles, into the stream of commerce.

33. Walmart marketed, advertised, offered for sale, sold, distributed, facilitated the sale of, and otherwise placed the subject Ridstar electric bicycle into the stream of commerce through Walmart.com.

34. Walmart derived financial benefit from the sale of the subject bicycle and held itself out to consumers as a trusted retailer through which consumers could safely purchase products offered on its online marketplace.

35. The subject Ridstar electric bicycle, as sold to Plaintiff's guardian, deviated from its intended design and from otherwise identical units manufactured to the same specifications.

36. Specifically, the front wheel retention system as manufactured did not conform to the product's own design specifications, resulting in a mechanism that permitted the front wheel

NOT A CERTIFIED COPY

to unexpectedly detach during ordinary operation, causing a sudden and catastrophic loss of control.

37. This manufacturing defect existed at the time the bicycle left Walmart's possession, distribution chain, marketplace, or control and reached Plaintiff without substantial change.

38. The bicycle was unreasonably dangerous as a direct result of this manufacturing defect when used in its intended or reasonably foreseeable manner.

39. As a direct and proximate result of Walmart's sale of the defectively manufactured electric bicycle to Plaintiff's guardian, the Plaintiff, L.E., a minor, sustained bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money, and aggravation of a previously existing condition. These losses are either permanent or continuing in nature and Plaintiff, L.E., will suffer these losses in the future.

**COUNT III**
**STRICT PRODUCTS LIABILITY — FAILURE TO WARN AGAINST WALMART INC.**

40. Plaintiff realleges and incorporates paragraphs 1 through 22 as though fully set forth herein.

41. At all times material hereto, Walmart was engaged in the business of marketing, advertising, distributing, supplying, facilitating the sale of, selling, and otherwise placing consumer products, including electric bicycles, into the stream of commerce.

42. Walmart marketed, advertised, offered for sale, sold, distributed, facilitated the sale of, and otherwise placed the subject Ridstar electric bicycle into the stream of commerce through Walmart.com.

NOT A CERTIFIED COPY

43. Walmart derived financial benefit from the sale of the subject bicycle and held itself out to consumers as a trusted retailer through which consumers could safely purchase products offered on its online marketplace.

44. The subject Ridstar electric bicycle's wheel retention system posed a foreseeable risk of the front wheel unexpectedly detaching during ordinary operation, causing sudden and catastrophic loss of control.

45. This risk was not obvious or apparent to an ordinary consumer, including Plaintiff's guardian, and was known or reasonably should have been known to Walmart at the time the bicycle was sold.

46. Walmart failed to provide adequate warnings or instructions regarding the risk of front wheel detachment, the need for proper installation, inspection, or tightening of the wheel retention mechanism, and/or the consequences of the mechanism's failure.

47. Had adequate warnings or instructions been provided, Plaintiff's guardian would have taken precautions that would have prevented or reduced the risk of the incident and Plaintiff's resulting injuries.

48. The bicycle, as sold without adequate warnings, was unreasonably dangerous in the condition it reached Plaintiff, without substantial change from the condition in which it left Walmart's possession, distribution chain, marketplace, or control.

49. As a direct and proximate result of Walmart's failure to warn in connection with its sale of the electric bicycle to Plaintiff's guardian, the Plaintiff, L.E., a minor, sustained bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money, and aggravation of a previously

NOT A CERTIFIED COPY

existing condition. These losses are either permanent or continuing in nature and Plaintiff, L.E., will suffer these losses in the future.

**COUNT IV**
**NEGLIGENT DISTRIBUTION / FACILITATION OF SALE AGAINST WALMART INC.**

50. Plaintiff realleges and incorporates paragraphs 1 through 22 as though fully set forth herein.

51. Walmart owed Plaintiff and the consuming public a duty to exercise reasonable care in the marketing, advertising, promotion, distribution, sale, facilitation of sale, and placement of consumer products, including the subject Ridstar electric bicycle, into the stream of commerce through Walmart.com.

52. Walmart knew, or through the exercise of reasonable care should have known, that electric bicycles are capable of causing catastrophic injury if defectively designed, manufactured, assembled, or inspected.

53. Walmart knew, or through the exercise of reasonable care should have known, that consumers rely upon Walmart's reputation, brand recognition, and marketplace when deciding whether to purchase products through Walmart.com, and that consumers reasonably believe products offered through Walmart.com have been subjected to reasonable oversight, vetting, and safety screening before being offered for sale.

54. Walmart further knew, or should have known, that electric bicycles sold through Walmart.com were foreseeably purchased for and operated by children and teenagers, notwithstanding any labeling suggesting the product was intended for adults, as evidenced by the nature of the product, Walmart's marketing platform, and customer activity occurring on Walmart.com.

NOT A CERTIFIED COPY

55. Walmart breached its duty of reasonable care in the distribution and facilitation of the sale of the subject bicycle by, among other things:

a. Continuing to market, advertise, promote, facilitate, and profit from sales of the subject bicycle despite information that reasonably should have alerted Walmart that the product posed an unreasonable risk of serious bodily injury;
b. Failing to adequately warn consumers of known or reasonably discoverable dangers associated with the subject bicycle;
c. Failing to suspend, remove, or otherwise restrict the sale of the subject bicycle pending investigation of reported safety concerns;
d. Placing profits and marketplace sales ahead of consumer safety; and
e. Otherwise failing to exercise reasonable care in the distribution and facilitation of sale of the subject bicycle under the circumstances.

56. Walmart's negligence created a foreseeable and unreasonable risk that a defective and unreasonably dangerous product would reach consumers, including Plaintiff.

57. As a direct and proximate result of Walmart's negligence, the Plaintiff, L.E., a minor, sustained bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money, and aggravation of a previously existing condition. These losses are either permanent or continuing in nature and Plaintiff, L.E., will suffer these losses in the future.

NOT A CERTIFIED COPY

## COUNT V
## NEGLIGENT SELECTION, VETTING, AND RETENTION OF MARKETPLACE SELLER AGAINST WALMART INC.

58. Plaintiff realleges and incorporates paragraphs 1 through 22 as though fully set forth herein.

59. Walmart owed Plaintiff a duty to exercise reasonable care in selecting, approving, investigating, monitoring, supervising, retaining, and permitting third-party merchants, including Ridstar, to sell potentially dangerous consumer products, including electric bicycles, through Walmart's online marketplace.

60. Walmart exercised substantial control over its online marketplace, including but not limited to approving or rejecting marketplace sellers, establishing seller requirements, regulating product listings, receiving and monitoring customer complaints and product reviews, processing customer payments, facilitating communications between purchasers and sellers, removing products from sale, suspending marketplace sellers, and otherwise controlling the products offered to consumers through Walmart.com.

61. Walmart had the ability to monitor customer reviews, consumer complaints, warranty claims, seller communications, product ratings, refund requests, incident reports, and other information generated through its marketplace concerning the safety and reliability of products offered for sale, including the subject bicycle.

62. Walmart knew, or through the exercise of reasonable care should have known, that electric bicycles are capable of causing catastrophic injury if defectively designed, manufactured, assembled, or inspected, and that reasonable vetting and monitoring of third-party sellers of such products was necessary to protect consumers.

63. Walmart breached its duty of reasonable care in the selection, vetting, and retention of Ridstar as a marketplace seller by, among other things:

a. Failing to adequately investigate Ridstar before authorizing Ridstar to sell electric bicycles through Walmart.com;
b. Failing to exercise reasonable care in approving Ridstar as a marketplace seller;
c. Failing to implement reasonable procedures for evaluating the safety of electric bicycles offered through Walmart.com;
d. Failing to require reasonable proof that the subject bicycle had been adequately designed, tested, manufactured, assembled, inspected, and quality controlled before permitting its sale;
e. Failing to adequately monitor customer complaints, warranty claims, incident reports, customer reviews, seller communications, and other information concerning the safety of the subject bicycle;
f. Failing to reasonably investigate reports of product failures and dangerous conditions associated with the subject bicycle; and

NOT A CERTIFIED COPY

g. Otherwise failing to exercise reasonable care in the selection, vetting, and retention of Ridstar as a marketplace seller under the circumstances.

64. Walmart's negligence in selecting, vetting, and retaining Ridstar as a marketplace seller created a foreseeable and unreasonable risk that a defective and unreasonably dangerous product would be offered for sale to and reach consumers, including Plaintiff.

65. As a direct and proximate result of Walmart's negligence, the Plaintiff, L.E., a minor, sustained bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money, and aggravation of a previously existing condition. These losses are either permanent or continuing in nature and Plaintiff, L.E., will suffer these losses in the future.

WHEREFORE, Plaintiff, L.E., by and through his parent and natural guardian, demands judgment against Defendant, WALMART, INC., for damages in excess of Fifty Thousand ($50,000.00) Dollars, as well as costs, pre-judgment interest where applicable, and demands trial by jury on all issues so triable as a matter of right.

DATED this 30th day of JULY 2026.

**GOLDMAN & DASZKAL, P.A.**
*Attorneys for Plaintiff*
1630 West Hillsboro Boulevard
Deerfield Beach, FL 33442
P. (954) 428-9333/ F. (954) 428-9338
Service.stallone@gdinjurylaw.com

BY: *[/s/ Joseph F. Stallone]*
**JOSEPH STALLONE, ESQ.**
FBN: 1002843

NOT A CERTIFIED COPY